181951 United States v. Stephen Mantha Good morning, Ma'am. Who's the clerk? Ms. Rose, you're on ahead so I'm going to let you settle here. Before we begin, I would like to reserve a minute and a half for rebuttal. Okay. Thank you. Good morning, Ma'am. This is the court. Rachel Haines for Stephen Mantha. Mr. Mantha was sentenced for two temporally and factually separate offenses at the same time. The ones he committed in 2016 that led to federal authorities searching his house and the violation of 18 U.S.C. 2251 he committed in 2001 that the search unearthed. The 2013 Supreme Court case of Pew v. United States instructs that using the 2016 sentencing guidelines for the 2001 offense was a violation of the ex post facto clause of the Constitution. The later guidelines recommended a sentence 89 months higher than those in place when the crime was committed. Defense counsel argued and the government acknowledged, both at the trial level and on appeal, that sentencing Mantha under the 2016 guidelines for his 2001 offense would fall squarely within the purview of Pew. Grouping under the one book rule was improper because the offenses were unrelated. Unlike in the case of Peyton Ferry, Mantha was not choosing to proceed with a closely related course of conduct, which would have put him on notice that the grouping rules would apply. For this court to hold otherwise would be to carve out a broad constitutional exception specifically for child sex offenders as other child sex offenders who share only a general motivation and are not considered to be closely related. Let me be clear. I understand what you're arguing. Are you saying there was no violation? Oh, no, not at all. The 2016 child pornography offenses and the 2001 sexual exploitation of a child offense could not be grouped under the grouping rules because they were against different victims. Under 3D1.2, where does that take you? How do you avoid the ex post facto problem? I do not claim to avoid it. The judge could have avoided the ex post facto problem in this case using one of the ways that the Ninth Circuit pointed to as harmless error. They say harmless error may result if the district court acknowledges that the correct guideline range is in dispute and performs the sentencing analysis twice with the correct and the incorrect range or chooses a within guidelines sentence that falls within the incorrect and correct guidelines range and explains the sentence adequately. Let me just slow you down for a second and ask. Don't you have a case here in which below both the prosecution and the defense agreed the trial judge was using the wrong guideline range? They didn't agree specifically that they were using the wrong guideline range. They agreed that it would be a violation of the ex post facto to use the lower guideline range. The judge didn't... Wait a minute. Wait a minute. Now you've lost me. Wait a minute. Wait a minute. Let me just say, we absolutely love appellate attorneys, but you've got to slow down. Go ahead. Did the judge use the correct guideline range? He did not. And we know this because he indicated in the statement of reasons that the sentence was below the guideline range. And just as in the footnote 8 in Pew... So take it a step at a time. So you say he used the wrong range below because he used the new one rather than the old one. That's correct. We know this for two reasons. And did the government argue that he should have used the new one or instead did the government also argue that he should use the old one? The government agreed that he should have used the old one. Okay. So you've got a case where both parties agreed that the judge used the wrong one. Yes. The government's argument on appeal is that this is harmless, but it can't show harmlessness here. Firstly, and most importantly, everyone missed this in briefing. Wait a minute. Judge, go ahead. The next question. Right. So you've got what appears to be agreed upon error below, although we'll still hear from the government. Maybe they've changed their view. And so you're now responding to the government's alternative argument or primary argument that even though there was an error, it was harmless. I think the government may be arguing that you have some plain error test for failure to fully preserve, but we'll come back to that. So how do you deal with the notion that the trial judge, by saying, I would have done the same sentence anyhow, but that therefore means there's no error, either no harmless error or no prejudice under plain error? Well, there is a line of cases saying that if he says that without actually giving an explanation for a sentence that would have been sufficient under the old guidelines, that's not good enough. Specifically, in Pew footnote 8, it says that a harmlessness argument would have failed because the sentencing judge, because they indicated that the sentence was within the wrong guideline range. And that happens here in the statement of reasons the judge indicated that he sentenced below the guideline range. He sentenced 45 months above the correct guideline range. But I also want to point out that So stay with that. So I think what I hear you saying is this is a case in which not only did he use the wrong guideline range, but I think you're also saying that with the correct guideline range, this becomes an upwardly variant sentence. Exactly. And so you're relying on our case law regarding the duties that a trial judge has to explain an upwardly variant sentence. That's correct, Judge. And on the standard of review, if I read the record correctly, I don't think you made that particular objection below. That the The adequacy of the explanation. No, that was not made below. So you're assuming a plain error test, though, on Why isn't this rather straightforward? The judge apparently denies there's an ex post facto violation. It seems as if there was one. The judge said, well, I'd give the same sentence anyway. But he didn't make that in a situation where he clearly understood that he had violated the ex post facto clause. Why isn't the simple explanation to ask him to take a further look? At the problem. Now that he knows there's a violation and to tell us why he wants to give the same sentence, he can write a one paragraph opinion and ask him to think again. And if he came up with the same sentence, you'd have to explain it. And then we'd have something to review. Why is this a one paragraph remand? Our argument is that it should be in part also because the judge also sentenced outside of the statutory maximum for the. I didn't understand what you're saying. This is in addition to the government can argue over the standard of review. But this is also plain and obvious error because the judge sentenced over the statutory maximum term of supervised release. It was noted at the plea hearing that under the 2001 law, this would have been a maximum three year term and it was a concurrent five year term. So either way, this case requires resentencing. But Manta is entitled to more under Pew. He's entitled to he's entitled to a sentencing at which the judge articulates the reasons why he's being punished more harshly than other people who committed the same crime at the same time. The government can point to plausible reasons contained in the record, but without the judge, as you say, putting down any of those reasons, we don't know what he might have relied on. It sounds as if you're inviting a remand. Just waiting. He's already got there written up. No, I don't know what the answer is, why it shouldn't be remanded. We are requesting a remand for resentencing. Oh, see. It's good to have everybody in agreement. There may be one person who doesn't agree with it. In any case, the judge's comment without actually being joined with an adequate statement of the reasons for the sentencing that would have passed muster under the 40, 45 month upward variance from the correct guidelines. That's what the Seventh Circuit calls in cases that were issued both before and after Pew of the United States, a conclusory comment tossed in for good measure. And they say that that does not show Harmel's error without a detailed explanation of the basis for the parallel result. And that's from United States v. Addis, 560 of 3D660. The Ninth Circuit has an excellent explanation. In United States v. Hanson issued this past August, they have a very similar error that came up there. That defendant was also needed to be remanded for resentencing because of an ex post facto error sentencing to more than the statutory maximum term of supervised release. I think instead of hearing about Ninth Circuit cases, in four minutes and 56 seconds, we're probably going to hear about our cases in Acevedo, Hernandez, Tavares, and Gonzalez-Rodriguez. So you may want to use some of your time to address how those cases would be distinguished, if they can be distinguished. Those cases were distinguished in my reply brief. Essentially, they all contain either an excellent explanation for the sentence, a long and thorough sentencing, or they are such a minimal difference or something that was within both the correct and the incorrect guidelines, such that the amount of explanation for the sentence required would have been almost nothing anyway. I would like to point to one case from this circuit. It's a little older. It was United States v. Oregon, 683 of 3D1 from 2012. This was before Pew, but this court found harmlessness, and this is specifically to respond to the government's argument that the adequacy of the explanation can't be considered in the harmlessness. In Oregon, this court found that an ex post facto error was harmless where both guideline ranges resulted to life, and it said it considered as most important that the judge's own detailed substantive explanation for choosing the sentence relied on factors outside the offense level. Unless the court has any more questions. Thank you. Good morning, Your Honors. May I please the court? Are you conceding that the wrong guidelines were used? We are not, Your Honor. The government's view on appeal is that the existence of the multiple offense rule itself provided the requisite notice to the defendant here that if he continued to commit crimes, that would be sentenced together with his later crime, that would sweep the earlier crimes into the later guidelines. Now, we make that argument fully recognizing, as we did below, that this court's reasoning in Pagan-Ferrer would seem to suggest that the grouping rules are essential to the notice analysis. However, in Pagan-Ferrer, the court didn't have to decide the question that is precisely presented here in terms of the ex post facto issue. And inasmuch as this court is not bound by an erroneous concession of law to the extent that was erroneous, we felt that it was incumbent upon us to raise this additional argument on appeal that we became aware of while researching this case. And that's what we did in this issue in the course of the briefing here. And according to that argument... Did you argue this in your brief on appeal? We did flag, Your Honor, that this argument has been made elsewhere. Our primary argument is, of course, that the court needn't decide the ex post facto issue because, in our view, any error here was harmless. I read your brief saying we don't need to argue it, but it seems you conceded below that the judge was using the wrong rule. And on appeal, I don't see, unless it's buried in a footnote or a sentence somewhere, I don't see any argument that the judge actually used the correct range. In our view, the issue was adequately preserved for appeal by reference to the fact of this argument, which is, frankly, a simple one. It's an argument that posits that the multiple offense rule provides the requisite notice, such that any disadvantage to the defendant from application of the later guidelines has to do, is stemming from not the guidelines amendment, but rather his decision to continue engaging in conduct that is closely enough related to the other conduct in order to be swept into the later guidelines. I do, though, I would like to focus on the government's harmless error argument here, which is its primary argument. And in that regard, I want to make clear from the outset that the government is not suggesting, as the defendant has claimed in his reply brief and again here today, that the district court's explanation for its chosen sentence is utterly irrelevant to or can't be considered as part of the harmlessness analysis. The government's argument, rather, is that while that explanation may be sufficient and indeed would be preferable, it's not necessary here because of the particular circumstances of this case. We have to consider not just any explanation that the district court offered for the sentence, but also its statement of its intent to untether the sentence from any ex post facto error, as well as the context, importantly, in which that statement is made. And in terms of the context, I want to emphasize, I think, two points. First, this is not a case where the district court was unaware of ex post facto concerns and made a generalized statement that it was intending to impose a non-guideline sentence. Quite the contrary, the ex post facto issue here was, as the district court put it, extensively briefed and extensively discussed. And the judge got it wrong, apparently. He may well have, but I don't think the important analysis is whether or not, in fact, there was an error, but rather whether the judge was fully aware of the potential issue. We have cases where a judge makes no error, gets it precisely correct as to what the guideline sentencing range is, then gives an upwardly variant sentence, and we say, you've got to provide some explanation when you do that, and the higher you go, the greater the variance, the more you have to explain it. Our decision in Montero, Montero and Rivera-Gonzalez both said that. That's where the judge making no error whatsoever. Here we have a judge uses what seems to be the wrong guideline range, and then simply says, if I'd used the other range, I would have had the same sentence. It doesn't even say it that concretely, as Judge Cayatta just said. He says, I thought about it, and I believe that would have been the sentence I was going to impose under either scenario. Well, respectfully, Judge Thompson, that particular suggestion is not one that the defendant has made anywhere in his briefing. My understanding of his argument is that the terseness of the district court statement, coupled with the absence of an explanation, is what's giving rise to a problem here. He has never suggested that there's any ambiguity whatsoever in the district court statement. Say it slowly again. I was simply pointing out that insofar as Judge Thompson has suggested that there may be some ambiguity in the district court statement of its intent to, in fact, make an error, that is not an argument that the defendant has raised. I don't see why you need to rely on that. The fact is the judge made a significant mistake in law, or at least nobody's arguing, that the ex-sus facto clause doesn't apply, as far as I can tell. And it seems a little hard to imagine that under those circumstances he might want to think again before he imposed exactly the same sentence, understanding that the first decision was flawed by the ex-sus facto violation and that he might well be able to explain it, but why wouldn't we ask him? It's not that hard. Well, to flush out a point that I was beginning to make earlier, I think it's relevant here that the ex-sus facto issue was an issue that was extensively briefed. It wasn't got it wrong. Perhaps, yes. Well, the government is not conceding that error on appeal. You're not conceding that it was an ex-sus facto? No, we are not. Well, as I stated at the outset, the argument is that, simply put, the multiple offense rule found in 1B... What does that have to do with the constitutional prohibition against the application of rules that didn't exist at the time the sentence was imposed? Well, the argument, Your Honor, is simply that... The argument is simply that the ex-sus facto analysis turns on the question of notice. It doesn't. The notice issue is something that seems to confuse the Supreme Court to some extent, but it is not, in fact, a test of ex-sus facto. It was given in court cases as an example of one of the things that the ex-sus facto clause guards against, but it is not the test of an ex-sus facto violation. The reliance on one of the reasons for the ex-sus facto clause does not turn that reliance into a test of whether there's an ex-sus facto violation. And if there's an answer to that, I'd be delighted to hear it. I understand Your Honor's argument. Our reading of the case law is that the touchstone is notice, but... But that's an amazing argument. All right. How is your argument? Particularly in light of Your Honor's concern, I do want to return to the harmlessness. As I was saying, I think it really is relevant that the ex-sus facto issue here was flagged. This Court's decision in United States v. Rodriguez in 2010, this Court noted that the district court's awareness of the potential ex-sus facto concerns and its awareness of the difference in the guidelines range that would result, applying a different version of the guidelines, is relevant to the analysis. But how can you say the judge, knowing that he made a fundamental constitutional error and that he's not given a very coherent explanation for why he's giving the same sentence under either scenario, why he shouldn't be asked to take a quick look at it? Well, I think actually the explanation is apparent on the face of the record. The reasons for the sentence that the district court imposed here are manifest. Are what? This is a defendant who sexually abused a young boy over the course of months, if not longer, and he rather brazenly and repeatedly accessed child pornography on his United States Postal Service computer. Those factors take this case out of the mind run of cases that are captured by the relevant guideline. In fact, the government saw those factors as so aggravating that notwithstanding its view that the appropriate calculation was 121 to 151 months, the appropriate sentence here was in fact the statutory maximum sentence of 241 months. I think it's also relevant here that even aside from any potential error in the guidelines calculation, the district court was entitled to consider the later guidelines. As the Supreme Court recognized in Peugh, the district court can look to the later guidelines as the most recent statement of the agency charged by Congress with establishing the relevant sentencing guidelines. And so there are factors here that I think are evident from the record that are pulling in an upward direction above the 121 to 151, even entirely in the absence of any erroneous calculation of the guidelines. It seems below that it seems that the government was very prudent here below. It saw this issue on the ex post facto, saw it may be unnecessary to take the risk, so urged the judge not to go with the higher range. And then when the judge did, tried to get the judge to offer some explanation as to what he would have done under the correct range. How does it hurt to just send this back, to just give the court below a chance to do what the government itself wisely thought was a good issue, and then there will be, if everything you say is correct, there will be the same sentence and there will be no doubt about it. And if perchance upon finding that really he should ignore the higher range and some anchoring effect it might have had on his thinking, we get a more just sentence. Well, I agree with the suggestion embedded within Your Honor's question, that insofar as it concerns the parties here in the court, the expenditure of resources to conduct that remand are limited. There is a human cost, though, as I think the sentencing transcript makes clear. Every reopening of this case is a reopening of the wound for the victims. And while obviously the defendant's constitutional rights would take priority over those concerns, I do want to sort of dispel any notion that a remand is costless, such that we can avoid engaging in the harmless narrative analysis. Well, there's a difference. If we're remanding for guilt or innocence, that would be the type of reopening that would certainly have more of those collateral effects. But this is a remand just to see if the sentence is, once the judge knows for sure what the correct range is, if that's the same sentence or perhaps it's a little lower. It's still going to be, there's nothing in this record to suggest there's not going to be a substantial sentence. And that is an approach that this court may well choose to undertake. The government's view, however, is, again, that it's simply not necessary because it is clear from this record the rationale for the court's sentence. And Judge Hayata, you mentioned earlier... I'm sorry, do you have any insight into why the court didn't give us more? I don't, Your Honor. I would emphasize, though, that the government's view is, of course, that the sentencing judge should be saying more, and frankly, not just in the context of cases in which there's a potential ex post facto problem. Again, to return to a point that Judge Hayata was making earlier, the various cases in which this court has remanded for failure to explain finding plain error, it was clearly, and recognizing that those are not particular to the ex post facto context, I would note that they generally involve concerns that are not present here. In Rivera-Gonzalez, for example, this court noted that there was some suggestion from the district court itself that the sentence was unfair. And in Montero-Montero, the court noted that the record offered very few clues as to what might have been going on in the district court's mind when it imposed this drastic sentence. And I would note, importantly, that in the latter scenario, in Montero-Montero, this court acknowledged, even in the context of stating that the burden of explanation grows with the difference in, excuse me, with the extent of the upward variance, that this court can look to fair inferences from the record in order to discern those rationale. We would suggest that, just as in those cases, that is what can be done here, and that when one does that, it becomes clear that the district court's upwardly variant sentence, if you will, if there is an ex post facto error, was fully justified. And that, taken in combination with the fact that this was a carefully considered decision, made after thought by the district court, and reiterated in the statement of reasons that, ultimately, this error is harmless and no remand is I take it that is the government's position that the harmless error test is the one that you are urging we apply and find that the error was harmless? Yes. Acknowledging, though, that given that it is a constitutional violation, we would have to show harmlessness beyond a reasonable doubt. Unless there are any further questions, the government would rest on its feet. Thank you. Thank you. I would just like to respond extremely briefly. Firstly, the government's argument as to the extent to which this was pointed out to the judge below as why it should be harmless seems to be backwards to me. The government appears to be asking for a lower standard of review because there was so much notice and because the issue was so well preserved. And secondly, I would like to very briefly address the notice argument, even if it is not ultimately relevant. This court should take the opportunity to join them at the jurisdictions. The notice does make it clear that this is an unrelated case. This is not like in Pagan-Ferrier. Pagan-Ferrier, the defendant, was lying to federal authorities to cover up for an unrelated case. How does that help your client at all? Because these are two entirely separate offenses that have nothing to do with each other. No, no, no. But if we just assume there is an ex post facto error and go right to the harmless error test, isn't that what you want us to do? Yes. So how does it help you if we instead digress about whether the ex post facto does or does not apply? It is solely because this is a good case to make a statement that was made in Pagan-Ferrier and is now being argued over in these sorts of cases as to what constitutes offenses that can be used the same set of sentencing guidelines because they are closely related and to what extent you can have a case that can bring you up to the new guidelines. Thank you.